# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELEE VONGDARA, on behalf of himself and others similarly situated,<br><br>                        Plaintiff,<br><br>v.<br><br>TECH DIGITAL CORPORATION; BECTON DICKINSON AND COMPANY; and DOES 1 to 100, inclusive,<br><br>                      Defendants. | Case No.: 3:25-CV-01168-H-AHG<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR ATTORNEY'S FEES**<br><br>[Doc. No. 24.] |

      On August 15, 2025, Plaintiff Delee Vongdara filed a motion to remand the action back to state court for lack of subject matter jurisdiction. (Doc. No. 18.) On September 15, 2025, Defendant Becton, Dickinson and Company ("BD") filed a response in opposition to Plaintiff's motion. (Doc. No. 24.) On the same day, Defendant TechDigital Corporation filed a notice of joinder to Defendant BD's opposition to Plaintiff's motion. (Doc. No. 25.) On September 18, 2025, Plaintiff filed a reply in support of their motion to remand. (Doc. No. 26.)

      A hearing on Plaintiff's motion to remand is currently scheduled for Monday, September 29, 2025 at 10:30 a.m. The Court, pursuant to its discretion under Civil Local Rule 7.1(d)(1), determines the matter is appropriate for resolution without oral argument,

submits the motion on the parties' papers, and vacates the hearing. For the reasons below, the Court denies Plaintiff's motion to remand.

## Background

The following factual background is taken from the allegations in Plaintiff's complaint and the Declaration of Jaime Serrano attached to Defendant's Notice of Removal. (Doc. No. 1-6, Serrano Decl.)

Defendants are temporary service employers within the meaning of California Code of Regulations, title 8 § 11040. (Doc. No. 1-3, Compl. ¶ 13.) Defendants employed Plaintiff and other employees on an hourly basis as non-exempt workers to perform work in California for various customers. (Id. ¶ 14.)

On February 26, 2025, Plaintiff filed a complaint in the Superior Court of California, County of San Diego against Defendants, alleging causes of action for: (1) failure to pay wages for all hours worked at minimum wage in violation of California Labor Code §§ 1194, 1197; (2) failure to pay overtime wages in violation of California Labor Code §§ 510, 1194; (3) failure to authorize or permit meal periods in violation of California Labor Code §§ 512, 226.7; (4) failure to authorize or permit rest periods in violation of California Labor Code § 226.7; (5) failure to provide accurate wage statements in violation of California Labor Code § 226; (6) failure to timely pay all wages earned in violation of California Labor Code §§ 201-203l; and (7) unfair business practices in violation of Business and Professions Code § 17200, et seq. (Id. ¶¶ 1, 13-42.) Plaintiff is bringing the action as a class action on behalf of himself and the "California Class," comprising of "all current and former hourly non-exempt employees employed by Defendants" of multiple subclasses, including: 1) a minimum wage class, 2) an overtime class, 3) a regular rate class, 4) a meal period class, 5) a meal period premium wages class, 6) a rest period class, 7) a rest period premium wages class, 8) a wage statement class, and 6) a waiting time class. (Id. ¶ 43(A)-(J).)

From February 26, 2021 until the present, Defendant BD employed at least 572 non-exempt employees in California. (Serrano Decl. ¶ 4.) These employees worked

approximately 60,195 work weeks at an average hourly rate of $29.18.  (Id.)

From February 26, 2024 until the present, Defendant BD issued approximately 9,230 pay statements to approximately 355 non-exempt employees in California.  (Id. ¶ 5.)

From February 26, 2022 until the present, approximately 182 non-exempt employees terminated their employment with Defendant BD.  (Id. ¶ 6.)  These employees were paid at an average hourly rate of $28.92.  (Id.)

On May 7, 2025, Defendants removed the action to United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1441 on the basis of the Class Action Fairness Act ("CAFA") under 28 U.S.C. § 1332(d).  (Doc. No. 1, Notice of Removal.)  On May 14, 2025, Defendant BD filed an answer to Plaintiff's complaint. (Doc. No. 4, Answer.)

By the present motion, Plaintiff moves to remand the action back to the Superior Court of California, County of San Diego for lack of subject matter jurisdiction.  (Doc. No. 18-1 at 10.)

## Discussion

### I. Legal Standard

Federal courts are courts of limited jurisdiction.  United States v. Mark, 530 F.3d 799, 810 (9th Cir. 2008).  "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998).  A case is removable only if it could have been originally filed in federal court.  Chicago v. Int'l Coll. Of Surgeons, 522 U.S. 156, 163 (1997) (quoting 28 U.S.C. § 1441(a)).

Federal subject matter jurisdiction may be premised on CAFA.  See generally 28 U.S.C. § 1332(d).  "As a threshold matter, CAFA applies to 'class action' lawsuits where the aggregate number of members of all proposed plaintiff classes is 100 or more persons and where the primary defendants are not 'States, State officials, or other governmental

entities against whom the district court may be foreclosed from ordering relief.'" Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1020 (9th Cir. 2007) (quoting 28 U.S.C. § 1332(d)(5)). If these prerequisites are met, CAFA provides federal courts original jurisdiction over class actions where there is minimal diversity between parties and the amount in controversy exceeds $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). While "no antiremoval presumption attends cases invoking CAFA," Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 89 (2014), "the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego Abrego v. The Dow Chem. Co., 443 F.3d 676, 685 (9th Cir. 2006).

"A plaintiff who contests the existence of removal jurisdiction may file a motion to remand."[1] Leite v. Crane Co., 749 F.3d 1117, 1122 (9th Cir. 2014) (citing 28 U.S.C. § 1447(c)). In its motion to remand, a plaintiff may raise either a facial or factual attack on the defendant's jurisdictional allegations. Id.; Salter v. Quality Carriers, 974 F.3d 959, 964 (9th Cir. 2020). "A 'facial' attack accepts the truth of the [defendant]'s allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" Id. (quoting Leite, 749 F.3d at 1121). A factual attack contests the "truth of the … allegations by making reasoned arguments as to why any assumptions on which they are based are not supported by evidence." Harris v. KM Indus., Inc., 980 F.3d 694 700 (9th Cir. 2020). When a plaintiff mounts a factual attack, both parties "submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Ibarra v. Manheim Invs., Inc., 775 F.3d 1193, 1199 (9th Cir. 2015).

//
//

---

[1] Defendants argue in its Opposition to Plaintiff's Motion to Remand that Plaintiff's motion was untimely. (Doc. No. 24 at 3.) A motion to remand challenging the court's subject matter jurisdiction may be brought any time before final judgment. 28 U.S.C. §1447(c). Here, Plaintiff's motion to remand challenges the Court's subject matter jurisdiction under CAFA, specifically the amount in controversy. Thus, Plaintiff's challenge to the Court's subject matter jurisdiction is timely.

## II. Analysis

Plaintiff does not dispute that the proposed class consists of 100 or more persons or that minimal diversity exists. Rather, Plaintiff asserts that jurisdiction is lacking in this case because the amount in controversy is below the $5 million requirement. (Doc. No. 18-1 at 6-9.) CAFA requires that the amount in controversy exceed $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). "In determining the amount in controversy, courts first look to the complaint." Ibarra, 775 F.3d at 1197. When "damages are unstated in a complaint" or the allegation is disputed, "[t]he parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence." Id. (internal quotation marks omitted). Parties invoking CAFA jurisdiction may also bear their burden by relying on a chain of reasoning and reasonable assumptions. Arias v. Residence Inn, 936 F.3d 920, 925 (9th Cir. 2019). Assumptions are reasonable if they are "founded on the allegations of the complaint. Id. (citing Ibarra, 775 F.3d at 1198-99). While "a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions," Ibarra, 775 F.3d at 1197, the defendant need not "research, state, and prove the plaintiff's claims for damages," Coleman v. Estes Express Lines, Inc., 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) (internal quotation marks omitted). When the defendant's assertion of the amount in controversy is challenged by plaintiffs, as it is here, the court decides where the preponderance of evidence lies. See Ibarra, 775 F.3d at 1198.

### A. Defendants' Use of Declaration

Plaintiff challenges Defendants' use of Mr. Serrano's declaration in calculating the amount in controversy. (Doc. No. 18-1 at 7; Doc. No. 26 at 5-6.) Plaintiff argues Defendants cannot rely on Mr. Serrano's declaration without producing evidence upon which Mr. Serrano bases his declaration. (Id.) Contrary to Plaintiff's argument, defendants need not "produce business records setting forth the precise number of employees in [the] putative class ... and the precise calculation of damages alleged to meet its burden regarding the amount in controversy." Long v. Destination Maternity Corp., 2016 WL 1604968, at

*6 (S.D. Cal. Apr. 21, 2016) (internal quotation marks omitted). A defendant is permitted to rely on a declaration from an individual who has reviewed relevant employee payroll and wage data to support its amount in controversy allegations. Enomoto v. Siemens Industry, Inc., 2023 WL 8908799, at *2 (9th Cir. 2023) (citing Salter, 974 F.3d at 963-64 (rejecting the plaintiff's argument that the defendant must provide business records to support its declaration) and Jauregui v. Roadrunner Transp. Servs., Inc., 28 F.4th 989, 991 (9th Cir. 2022) (accepting a declaration as sufficient "summary judgment style evidence" to support amount in controversy calculations)). Mr. Serrano established a sufficient foundation for his testimony, particularly at this early stage of the litigation, by declaring knowledge of the employment data provided in his declaration was based on his normal business responsibilities and personal review of Defendants' personnel records. (Serrano Decl. ¶2.) Accordingly, Defendants' use of Mr. Serrano's declaration in calculating the amount of controversy is appropriate.

B. Amount in Controversy of Plaintiff's Wage and Hour Claims

Defendants' estimation for Plaintiff's four wage and hour claims, not including Plaintiff's claims for wage statement penalties, waiting time penalties, and unfair business practices, is $7,140,469.45, with an additional $2,216,298.76 proposed for attorney's fees. (Doc. No. 24 at 7-8.) The Court focuses on these four claims below, because if established, these claims would exceed the $5 million threshold.

1. Minimum Wage Violations

Plaintiff alleges that Defendants failed to pay wages at the applicable minimum wage for all hours worked due to Defendants' "policies, practices, and/or procedures" requiring employees to "routinely work[] beyond their scheduled hours" and to "record timed meal breaks despite often missing or working through" them. (Compl. ¶¶ 16-18.) Plaintiff does not provide specific allegations or allege an approximate amount of unpaid minimum wages at issue, even on behalf of himself. (Doc. No. 26 at 3.)

Defendants submitted evidence that at least 572 non-exempt employees worked in California for Defendants during Plaintiff's proposed class period. (Serrano Decl. ¶ 4.) In

1  total, these employees worked approximately 60,195 work weeks at an average hourly rate
2  of $29.18 according to business and personnel records. (Id.) For purposes of the alleged
3  minimum wage violation, Defendants assume one hour of unpaid minimum wage per week
4  per employee at California's minimum wage of $16.50. (Doc. No. 1, Notice of Removal
5  ¶ 21; Doc. No. 24 at 7.) Defendants base these assumptions on Plaintiff's Complaint and
6  estimates "accepted by the federal courts as a reasonable and conservative figure." (Doc.
7  No. 1, Notice of Removal ¶ 22.) Plaintiff argues that Defendants' minimum wage valuation
8  lacks "reasonable support" because "the figures for the putative class and the number of
9  work weeks are estimated" and the "100% violation rate for one hour each week for each
10 and every employee" is "baseless[]." (Doc. No. 18-1 at 4-8; Doc. No. 24 at 3.)

11         Defendants are not required to "introduce evidence of the violation rate . . . because
12 the defendant[s] likely believe[] that the real rate is zero and thus that the evidence does
13 not exist." Perez v. Rose Hills Co., 131 F.4th 804, 808 (9th Cir. 2025); see also Serrieh v.
14 Jill Acquisition LLC, 707 F. Supp. 3d 968, 974-74 (E.D. Cal. 2023) (finding that defendant
15 is not required to comb through its records to identify and calculate the exact frequency of
16 violations). Neither are Defendants required to "prove it actually violated the law at the
17 assumed rate." Arias, 936 F.3d at 927. Rather, Defendants need only provide an estimate
18 of the amount in controversy that is plausible. Id. Defendants can "most readily ascertain
19 the violation rate by looking at the plaintiff's complaint." Rose Hills Co., 131 F.4th at 808.
20 "[A]ssumptions made [as] part of the defendant's chain of reasoning need not be proven;
21 they instead must only have 'some reasonable ground underlying them.'" Arias, 936 F.3d
22 at 927 (quoting Ibarra, 775 F.3d at 1199).

23         In Arias, the court found defendant's calculations reasonable as based on "personnel
24 and payroll data" and assumptions of "the frequency of violations of the sort alleged in the
25 complaint." Id. at 926. Here, Defendants used personnel and employment records for the
26 putative class, as cited in the Serrano Declaration, and made assumptions regarding the
27 frequency of violations based on the allegations in Plaintiff's Complaint. Plaintiff alleges
28 that he and similarly situated employees "worked more minutes per shift than Defendants

credited them with having worked," "routinely" worked beyond scheduled hours, and "often" worked through their meal breaks. (Compl. ¶¶ 16-18, 49.) Plaintiff further alleges that the failure to pay was "due to Defendants' policies, practices, and/or procedures." (Id.) It reasonably follows from Plaintiff's allegations that this policy affected all hourly, non-exempt employees. Defendants estimate of one hour of unpaid wages for every work week is also reasonable and well-supported by the findings of other district courts, especially given the lack of specific allegations to the contrary and where an improper employment policy has been alleged. See Kincaid v. Educ. Credit Mgmt. Corp., 2022 WL 597158, at *3 (E.D. Cal. Feb. 28, 2022); Kastler v. Oh My Green, Inc., 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019). Defendants' assumption, combined with the numbers of employees and approximate weeks worked in the declaration submitted by Defendant, reasonably demonstrates that $933,217.50 is in controversy with respect to Plaintiff's minimum wage violations claim.

### 2.   Unpaid Overtime Violations

As above, Plaintiff alleges that Defendants failed to pay overtime wages for all hours worked despite Defendants "routinely" requiring employees to "work[] beyond their scheduled hours" and "requiring Plaintiff and the Overtime Class to record timed meal breaks despite often missing or working through" them. (Compl. ¶¶ 21-22.) Plaintiff also alleges that Defendants failed to pay overtime wages at the proper overtime rate of pay and "maintained a policy, practice, and/or procedure of failing to include all renumeration" when calculating overtime. (Id.) Plaintiff does not allege an approximate amount of unpaid overtime at issue in his Complaint, Motion to Remand, or Reply. Neither does Plaintiff provide any indication of how much overtime he or members of the Overtime Class worked per shift.

Defendants assume 1.5 hours of unpaid overtime per week per employee based on Plaintiff's Complaint and a figure courts find "reasonable . . . based on allegations like those present in Plaintiff's Complaint." (Doc. No. 1 ¶ 25; Doc. No. 24 at 18-19.) Using this assumption, together with its evidence that at least 572 employees are at issue with an

average hourly pay rate of $29.18, Defendants estimate that Plaintiff's claim for overtime wages puts $2,634,735.15 into controversy in this action.[2] (Id.) Plaintiff argues that Defendants offer no support to show how many shifts qualified for overtime wages and unreasonably assume 1.5 hours of unpaid overtime per week per employee, citing Ibarra and cases from other district courts. (Doc. No. 18-1 at 4, 8; Doc. No. 26 at 6-7.)

We agree with Plaintiff and the Ninth Circuit that "a 'pattern and practice' of doing something does not necessarily mean *always* doing something," but the Ninth Circuit found this where defendants assumed violations occurred "in every identified shift for each class member, without giving any evidentiary explanation." Ibarra, 775 F.3d at 1199, n.3. Defendant's assumptions need only have "some reasonable ground underlying them," and an assumption is reasonable when it is supported by the allegations in the complaint. Arias, 936 F.3d at 927. It is reasonable to assume violation rates of 25% to 60% for regular and overtime wage claims as a matter of law based on "pattern and practice" or "policy and practice" allegations. Avila v. Rue 21, Inc., 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020) (collecting cases). An assumption of 1.5 hours of unpaid overtime per week per employee is particularly reasonable where violations are alleged to occur "as a matter of policy and/or practice." Andrade v. Beacon Sales Acquisition, Inc., 2019 WL 4855997 (C.D. Cal. Oct. 1, 2019); see also Rivera v. Agreserves, Inc., 2023 WL 5202575 (E.D. Cal. Aug. 14, 2023). Further, an assumption that class members worked 8-hour shifts is reasonable when a plaintiff fails to suggest alternatively "what proportion of Class Members did work eight-hour shifts and what number should be used instead." Herrera v. Signature Flight Support LLC, 2022 WL 4225376, at *2 (C.D. Cal. Sept. 13, 2022); see also Wheatley v. MasterBrand Cabinets, LLC, 2019 WL 688209, at *6 ("[B]ecause Plaintiff does not allege

---

[2] Defendants' calculation does not consider that California Labor Code § 510 requires employers to play employees that work in excess of 8 hours in a day or 40 hours in a week at a rate of no less than one and a half times an employee's regular rate of pay. See Cal. Lab. Code § 510(a). It also ensures a compensation rate of no less than twice the regular rate of pay when an employee works more than twelve hours in a day or more than eight hours on the seventh consecutive day of work. Id.

or offer evidence that some class members worked part time, it is reasonable for Defendant to assume eight-hour shifts.").

Here, given Plaintiff's allegations that employees "routinely worked beyond their scheduled hours" and were required "to record timed meal breaks despite often missing or working through their meal breaks," it is reasonable for Defendants to assume a 30% violation rate of 1.5 hours per week per employee. (Compl. ¶¶ 21, 49, 59-60.) Defendants do not assume a 100% violation rate like the defendants in Ibarra, nor do Defendants rely on a complaint that only alleges violations "at times." Cf. Gonzalez v. H&M Hennes & Mauritz L.P., 2022 WL 179292 (C.D. Cal. January 20, 2022) (finding no basis for suggesting that a violation rate of once per week is reasonable based on complaint language referencing violations "at times"). Finally, because Plaintiff does not allege any class members worked part-time, it is reasonable for Defendants to assume that each class member worked eight-hour shifts. See Wheatley, 2019 WL 688209, at *6. Defendants thus reasonably demonstrate that $2,634,735.15 is in controversy with respect to Plaintiff's claim for unpaid overtime.

### 3. Rest and Meal Break Violations

As above, Plaintiff alleges that Defendants employed "policies, practices, and/or procedures" that resulted in Defendants' failure to authorize or permit timely rest and meal periods to Plaintiff and Plaintiff's proposed Rest Period Class, Rest Period Premium Wages Class, Meal Period Class, and Meal Period Premium Wages Class. (Compl. ¶¶ 69-71, 78-80.) California Labor Code § 226.7 provides that if an employee does not receive a required meal or rest period that "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest period is not provided."

Assuming a violation rate of 20%, or one missed meal period per week, and 10%, or one missed rest period per week, Defendants estimate that Plaintiff's rest and meal break violation claims puts $3,512,516.80 into controversy in this action. (Doc. No. 24 at 7.) Defendants rely upon Plaintiff's broad allegations in the Complaint and the Declaration of

Jaime Serrano, providing an average hourly rate of $29.18 per putative class member. (Serrano Decl. ¶ 4.) Plaintiff argues that Defendants' assumption of a "uniform rate of one violation per week" is unreasonable, as Defendant has not provided evidence or cited any "internal audit, policy manual, or employee declarations." (Doc. No. 26 at 6.) Plaintiff also argues that Defendants unreasonably assume a 100% violation rate because Plaintiff's complaint alleges discrete practices, not pervasive violations. (Id. at 3.)

Here, the Complaint offers no guidance as to the frequency of the alleged violations, only that Plaintiff and the alleged class "often miss[ed] or work[ed] through their meal breaks without being paid for that time" and "regularly worked shifts of more than three-and-a-half (3.5) hours." (Compl. ¶¶ 49, 69.) Plaintiff also alleges that Defendants "employed policies, practices, and/or procedures that resulted in" meal and rest period violations. (Id. ¶ 78.) Consequently, in its notice of removal, Defendants conservatively assume putative class members were not provided one of five legally required meal periods and one of ten legally required rest periods they were entitled to receive each work week. See, e.g., Campbell v. Vitran Exp., Inc., 471 Fed. Appx. 646, 649 (9th Cir. 2012); Sanchez v. Abbott Laboratories, 2021 WL 2679057, at *4–5 (E.D. Cal. June 30, 2021) (collecting cases). Defendants' use of a 10% and 20% violation rate is reasonable, and the $3,512,516.80 amount will be included in the amount in controversy.

In sum, Defendants' calculations reasonably and appropriately yield an amount in controversy of $7,140,469.45 for Plaintiff's minimum wage, unpaid overtime, and rest and meal break violation claims. This calculated amount in controversy does not account for wage statement penalties, waiting time penalties, unfair business practices, or attorney's fees—amounts that, if included, would bring the amount in controversy in greater excess of $5 million. Defendants have carried their burden of demonstrating that at least $5 million is in controversy and thus satisfies the requirements to establish subject matter jurisdiction under CAFA.

//
//

      C.      Plaintiff's Request for Costs

As part of his motion to remand, Plaintiff requests an award of the costs and expenses incurred in bringing his motion to remand pursuant to 28 U.S.C. § 1447(c). (Doc. No. 18 at 9-10.) Section 1447(c) provides: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Absent unusual circumstances, a court may award costs and attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Grancare, LLC v. Thrower by & through Mills, 889 F.3d 543, 552 (9th Cir. 2018) (citing Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005)). "Removal is not objectively unreasonable 'solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted.'" Id.

"The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." Martin, 546 U.S. at 140. The decision to award attorneys' fees under § 1447(c) is left to the district court's discretion. Moore v. Permanente Med. Grp., Inc., 981 F.2d 443, 446 (9th Cir. 1992).

Based on the record currently before the Court, the Court cannot conclude that Defendant lacked an objectively reasonable basis for removing the case to federal court. As such, the Court, exercising its sound discretion, declines to award Plaintiff fees and costs under § 1447(c).

//
//
//
//
//

## Conclusion

For the reasons above, the Defendant has satisfied its burden of establishing that the Court has subject matter jurisdiction over the present action under CAFA. Accordingly, the Court denies Plaintiff's motion to remand.

**IT IS SO ORDERED.**

DATED: September 29, 2025

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT